IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

United States Magistrate Judge Gordon P. Gallagher

Civil Action No. 17-CV-1373-CMA-GPG

**SUSAN ROBINSON,**

Plaintiff,

v.

**THE OIL SHALE CORPORATION,**

Defendant.

---

**RECOMENDATION REGARDING DEFENDANT TOSCO'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

This matter comes before the Court on the following motion: Defendant TOSCO's motion to dismiss (ECF # 61),[1] Plaintiff's response (ECF# 67) and TOSCO's reply (ECF #73). The motion has been referred to this Magistrate Judge for recommendation (ECF #62).[2] The Court has reviewed the pending motion, response, reply and all attachments. The Court has also

---

[1] "(ECF #61)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument has not been requested and the Court finds that it is not necessary in this circumstance. This Magistrate Judge recommends that the motion be GRANTED in part and DENIED in substantial part.

Plaintiff filed suit against two Defendants, The Oil Shale Corporation (TOSCO) and XTO Energy, Inc. (XTO) (XTO's motion to dismiss (ECF #71) was addressed separately by way of a Recommendation filed at ECF #88). Plaintiff owns real property in Rio Blanco County, Colorado (ECF #48, p. 1, para. 1). Plaintiff's family acquired the property in the early 1900s (ECF #48, p. 2, para. 7). Plaintiff describes the parcel of real estate in question as being in sections 2, 3, 4, 9, 10, 11, 15, and 16 of township 4 South, range 95 West of the 6th P.M., Rio Blanco County, Colorado and then attaches to the amended complaint a map at exhibit A (adverse possession claim (APC)) (ECF #48, p. 2, para. 6 and exhibit A) (map at ECF #48-1). Plaintiff's property is adjacent to the APC. (ECF #48, p. 2, para. 7). In 1972, Plaintiff acquired a grazing lease "for the Property [APC] or a portion thereof, among other grazing rights, from BLM." (ECF #48, p. 2, para. 10). In 1986, TOSCO purchased a portion of the APC from the BLM. (ECF #48, p. 2, para. 11). In 1987, BLM informed Plaintiff that the BLM lease was no longer available and that a future lease would have to be from TOSCO (ECF #48, p. 3, para. 12). Plaintiff did not get a new lease from TOSCO and TOSCO gave no permission to be on the property (ECF #48, p. 3, paras. 13-14). Since 1986, Plaintiff has acted as a landowner of the APC by: constructing and maintaining roads, fences and gates; installing or maintaining windmills, springs, wells, water troughs and catch ponds; spraying weeds grazing livestock; and excluding others including hunters and hikers (ECF #48, p. 3, paras. 15, 16, 18 & 19). Plaintiff

claims to "have excluded others for over 100 years" and claims to have adversely possessed the APC for more than 18 years (ECF #48, p. 3, paras. 22-23).

Plaintiff turned out 97 cows and 97 calves for grazing on the APC in Schutte Gulch on 5/15/2017 (ECF #48, p. 4, para. 24). Some of the young heifers that were too small for mating with the large bulls were placed in a pen (ECF #48, p. 4, para. 25). On 6/1/2017, cattle were herded from Schutte Gulch to another APC location in Gordon Gulch (ECF #48, p. 4, para. 26). On 6/2/2017 Plaintiff determined that employees or agents of TOSCO interfered with gates maintained by Plaintiff, herded the cattle away from the pasture, and cut off the cattle from feed or water (ECF #48, pp. 4-5, para. 27). Plaintiff turned out her cattle on 6/3/2017 and then found that TOSCO was building a fence across the Schutte Gulch road, barring access and impeding the cattle from feed and water (ECF #48, p. 5, paras. 29-30). On 6/5/2017 TOSCO tried to chase the cattle through the fence they were constructing, forced the cows, separated the calves from the cows, panicked the cows, and caused the mother's milk to dry up (ECF #48, p. 5, paras. 30-34). Additionally, the heifers were released from their pen allowing them to mix with bulls too large for mating (ECF #48, p. 5, para. 35). The cattle lost weight and 13 were not found (ECF #48, p. 5, paras. 38-39). TOSCO had no permission to take such action regarding Plaintiff's cattle (ECF #48, p. 5, para. 41). TOSCO is on the property without permission, has not removed the fence, and constructed and/or used a pipeline across the property (ECF #48, p. 8, paras. 55-56).

Plaintiff filed eight claims for relief: (1) quiet title through adverse possession; (2) prescriptive easement; (3) trespass; (4) intentional wrongful and malicious driving of cattle; (5) negligence; (6) trespass to chattel; (7) tortious interference with prospective business advantage; and (8) unjust enrichment (ECF #48, pp. 6-12).

Defendant moves to dismiss the matter on the following basis:

1. Failure to state a plausible claim for relief as to adverse possession and prescriptive easement:

    a. Failure to show that the possession was exclusive;

    b. Failure to allege possession by showing that she acted as an ordinary land owner;

    c. Failure to show that the possession was adverse, particularly as the use began as permissive, there is a failure to show that an explicit disclaimer occurred transforming the use from permissive to adverse;

2. Failure to plausibly state a claim for adverse possession thus failing to state a claim for trespass as TOSCO cannot trespass on its own property;

3. Failure to state a claim for intentional driving of cattle as it is not an independent cause of action under Colorado law;

4. Failure to state a claim for negligence on the basis that there was no trespass and no duty of care owed by TOSCO;

5. Failure to state a claim for trespass to chattel as the land is TOSCO's, there was no trespass, thus there can be no trespass to chattel;

6. Failure to state a claim for tortious interference as Plaintiff has failed to show the existence of a contract or the likelihood of a prospective contract;

7. Failure to state a claim for unjust enrichment as it has not been shown how TOSCO will benefit from the items/services Plaintiff claims were provided (catch ponds, windmills, weed spraying, etc.), Plaintiff has not shown that TOSCO asked Plaintiff to pay for or provide the items, and Plaintiff has not shown that she expected compensation for her efforts.

Standard of Review

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory. *See Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although allegations of fact are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, the Court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91.

Where the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted) ("The nature and specificity of the allegations required to state a plausible claim will vary based on context . . . [and] requires the reviewing court to draw on its judicial experience and common sense." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011)).

> "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

As was noted in *Robbins*, "context matters." *Robbins*, 519 F.3d at 1248 (citation removed). "A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id*. "[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . ." *Id*. at 1250 (emphasis in original) (continuing on to determine that collective allegations against defendants as a whole makes it impossible to ascertain what any specific defendant may have done).

Rule 8

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Rule 8 are designed to meet these purposes. *See TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation

must be simple, concise, and direct." "At some point the factual detail in a complaint may be so *sketchy* that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,* 499 F.3d 663, 667 (7th Cir. 2007) (emphasis mine).

Claims 1, quiet title through adverse possession, and 2, prescriptive easement

"To obtain title by adverse possession, a party must establish that his possession was hostile, actual, exclusive, adverse under a claim of right, and uninterrupted for the statutory period." *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liability Limited Partnership*, 226 P.3d 1155, 1160 Colo. App. 2009) (citations removed). The statutory period is 18 years. C.R.S. 38-41-101(1). Hostility, actuality, exclusivity, adversity are questions of fact for the trier of fact. *Beaver Creek*, 226 P.3d at 1161.

Plaintiff claims to have "openly, notoriously, continuously, and adversely used the [APC] and the roads running through the [APC] for the purposes of grazing cattle, accessing and maintaining windmills, wells, springs, and stock ponds, and for other ranching purposes for more than 18 years" in support of her claim for prescriptive easement (ECF #48, p. 7).

Defendant TOSCO argues that Plaintiff fails to state a plausible claim for relief as to adverse possession and prescriptive easement for the following reasons:

    a.    Failure to show that the possession was exclusive;

    b.    Failure to allege possession by showing that she acted as an ordinary land owner; and

c. Failure to show that the possession was adverse, particularly as the use began as permissive, there is a failure to show that an explicit disclaimer occurred transforming the use from permissive to adverse, essentially, lack of notice.

In this suit, Plaintiff seeks to adversely possess thousands of acres from TOSCO and a far smaller amount from XTO (140 acres). As to the entire APC, Plaintiff claims to have "constructed and maintained roads, fences, and gates across and through the [APC]; install[ed] and maintain[ed] water troughs and catch ponds on the [APC], spray[ed] for and eliminat[ed] noxious weed on the [APC]; and graz[ed] livestock on the [APC]" (ECF #48, p. 3., para. 16). There are further, and similarly general, claims regarding removing trespassing hunters from the APC. *Id*. at para. 18. With regard to the TOSCO land in particular, Plaintiff describes the continued use of the APC from her Property through "her deeded land on Piceance Creek" (ECF #48, p. 4, para. 22) into the Schutte Gulch area of the APC (ECF #48, pp. 3-4) (cross referencing the map at ECF #48-1 it can be seen that Schutte Gulch runs north to south through approximately the center of the APC). Plaintiff further describes interference with gates she maintained, essentially in the same area but perhaps on either BLM or private property of Plaintiff (ECF #48, pp. 4-5, para. 27). Plaintiff also describes maintaining gates from her property to the APC (ECF #48, p. 4, para. 22). There is a map provided, ECF #48-1, which can be viewed in conjunction with the written explanations of the places describe herein.

Keeping in mind the burdens applicable at this stage of the action, the fact that the Court must presume that all well plead allegations are true and that all reasonable doubts need be resolved in the Plaintiff's favor, I find that Plaintiff has stated a claim for both adverse possession and prescriptive easement. As to exclusivity, Plaintiff claims that both she and her

deceased husband inspected the property regularly, maintained gates and fences to exclude others, and in-fact excluded others "including, without limitation, hunters and hikers . . ." (ECF #48, p. 3, paras. 17-19). While the facts supporting this allegation and others in this action may not withstand the crucible of trial, that is not the test at this juncture, rather plausibility is the touchstone. Plaintiff's claim of exclusivity is plausible despite TOSCO's argument that Plaintiff has failed to "explain how she prevented TOSCO from accessing and using the [APC's] 2,500 acres . . ." (ECF #61, p. 5). Plaintiff does explain this, she states that she and her husband fenced the property and excluded others.

TOSCO's argument that Plaintiff has failed to allege that she acted as an ordinary landholder also fails. *See Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989) (noting that "actual occupancy means the ordinary use to which the land is capable and such as an owner would make of it) (internal citation removed)). Plaintiff claims that she used the land in the fashion that would be appropriate for rural grazing land in north-west Colorado (building rough roads, spraying for weeds, building and maintaining fences, and seasonally grazing cattle upon the land). Those facts are plausible, in keeping with the nature of the land, and suffice to meet the standards of both Rule 12 and Rule 8.

Defendant further argues that the possession began as permissive and, even if it later became adverse, is missing the key element of notice. *See Beaver Creek*, 226 P.3d at 1162-63 (imposing a requirement that any change in circumstance from permissive to adverse put the actual owners "on notice of a potentially adverse claim.") Here, Plaintiff argues that notice occurred in 1986 when TOSCO purchased the APC from the BLM (who had previously provided a grazing lease), Plaintiff was given an option to lease from the TOSCO, Plaintiff did not execute such a lease, yet Plaintiff remained on the APC as alleged (ECF #48, pp. 2-3, paras.

9

10-15). The arguments regarding hostility and notice are properly reserved for the finder of fact. *See Beaver Creek*, 226 P.3d at 1161.

In Colorado, "an easement by prescription is established when the prescriptive use is: (1) open or notorious; (2) continued without effective interruption for the prescriptive period (eighteen years); and (3) the use was either (a) adverse or (b) pursuant to an attempted, but ineffective grant." *Matoush v. Lovingood*, 177 P.3d 1262, 1270 (Colo. 2008) (citation removed). For the reasons set forth above with regard to the adverse possession claim, the Court concludes that Plaintiff has sufficiently plead this claim to defeat the motion to dismiss. I respectfully recommend that the motion to dismiss be denied as to claims 1 and 2.

Claims 3, trespass, 5, negligence, and 6, trespass to chattel

TOSCO's argument as to each of these counts is premised on the theory that Plaintiff did not sufficiently plead count 1, the adverse possession claim. Essentially, as to the three listed counts, TOSCO's theory (with a bit of variation as to each claim based on the specific nature of that claim) is that the individualized claim cannot stand if TOSCO is the property owner. Having found that Plaintiff sufficiently and plausibly plead adverse possession, it naturally flows that she stated enough to plausibly state, in this context, that the land was hers. Thus, any argument that counts 3, 5, and 6 fail on that basis must be denied. I respectfully recommend that the motion to dismiss be denied as to claims 3, 5, and 6.

Claim 4, intentional, wrongful and malicious driving of cattle

Common law recognizes a claim for the negligent, wrongful, and malicious driving of cattle of another. *See Richards v. Sanderson*, 39 Colo. 270, 275-76 (Colo. 1907) (the claim

under common law was not extended in Colorado to "unenclosed" (essentially public) lands but appears to remain for the circumstance where someone drives the cattle of another on the other (owner's) land). Plaintiff's fourth claim for relief alleges that TOSCO "intentionally, wrongfully, and maliciously chased, herded and drove Plaintiff's cattle from grazing ranges on federal land and from the [APC]" (ECF #48, pp. 8-9, paras. 59-64). As to the portion of the claim regarding "public land," that term would appear to be synonymous with the definition of "unenclosed land" from *Richards*. The defect in this claim is the language that TOSCO acted "intentionally" rather than "negligently." This defect is imminently correctable by amendment, reflects a lower standard, and such amendment will not prejudice Defendant TOSCO at this stage.

I find that Plaintiff has sufficiently plead her fourth claim for relief. I respectfully recommend that the motion to dismiss be denied as to this claim. Should that recommendation be adopted, Plaintiff should be Ordered to amend her claim to assert negligence rather than intent with regard to claim four and to remove from the claim the language related to allegations occurring on "federal land" and the claim may only proceed with regard to alleged actions on the APC.

Claim 7, tortious interference with a prospective business advantage

To establish a claim for tortious interference with prospective business relations, a plaintiff must show intentional and improper interference preventing the formation of a contract. *Behunin v. Dow Chemical Company,* 650 F.Supp. 1387, 1392–93 (D.Colo. 1986); *Dolton v. Capital Federal Savings and Loan Association,* 642 P.2d 21, 23 (Colo.App. 1981). A defendant can interfere either by inducing or causing a third party not to enter into or continue relations, or

by preventing the plaintiff from acquiring or continuing the relations. *Behunin,* 650 F.Supp. at 1393. It is not necessary to prove an underlying contract. *Wasalco, Inc. v. El Paso County,* 689 P.2d 730, 732 (Colo.App.1984). However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope. *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 898 (3rd Cir. 1981). The nature of some ongoing relationship with another party appears crucial to proving the claim. *See Klein v. Grynbrg*, 44 F.3d 1497, 1506 (10th Cir. 1995).

Plaintiff has misconstrued the nature of this claim and is filing it in an inapplicable situation, essentially trying to hammer a square peg into a round hole. A fair reading of the case law for this claim shows a pattern of claims being sustained when one party does something along the lines of trying to convince one party not to do business with another party. *See Klein* 44 F.3d at 1500-1501. The claim for tortious interference has to do with relationships between people, whether a contract exists or not, and an attempt to thwart such a relationship. This is an entirely different concept from other types of damages such as driving cows, stealing a product from a store which could later be re-sold at a profit, or burning down someone's business thus making it impossible for a sale to occur.

The claim is not appropriate as plead by Plaintiff and must be dismissed for lack of a cognizable legal theory. *See Golan v.* Ashcroft, 310 F. Supp. at 1217. Therefore, it is respectfully recommended that claim 7 be dismissed.

Claim 8, unjust enrichment

In the event that Plaintiff does not receive a fee simple to the APC, she claims that Defendants will be unjustly enriched due to the improvements made to the APC over time, e.g.,

roads, water sources, weed spraying, and other benefits (EFT #48, pp. 11-12, paras. 84-90). The Colorado Supreme Court set for "the test for recovery under a theory of unjust enrichment as: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DCB Const. Co., Inc. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998). TOSCO essentially opposes prongs two and three of this test. With regard to prong two, TOSCO's argument, put plainly, is that the improvements are of no benefit to TOSCO, i.e., TOSCO does not really want water troughs, catch ponds, and the other items (ECF #61, p. 13). The third prong is essentially a value judgment about who should fairly pay for or compensate for the items. When the claim is plausibly plead, as this claim is, prongs two and three are to be left to a jury and are not fodder for dismissal at this point. For that reason, it is respectfully recommended that the motion to dismiss be denied as to claim 8.

For the foregoing reasons, I respectfully RECOMMEND that the motion to dismiss be GRANTED in part and DENIED in part as follows:

The motion should be denied as to claims 1, 2, 3, 4, 5, 6 and 8;

The motion should be granted as to claim 7.

It is further RECOMMENDED that the Court Order claim 4 to be amended to assert negligence rather than intent and to remove from the claim the language related to allegations occurring on "federal land."

Dated at Grand Junction, Colorado this January 23, 2018.

Gordon P. Gallagher

United States Magistrate Judge