IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01373-CMA-GPG

SUSAN ROBINSON,

 Plaintiff,

v.

THE OIL SHALE CORPORATION,

 Defendant.

---

**ORDER REJECTING THE JANUARY 23, 2018, RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE**

---

This matter is before the Court upon the January 23, 2018, Recommendation by Magistrate Judge Gordon P. Gallagher that the Court deny in part Defendant The Oil Shale Corporation's ("TOSCO") Motion to Dismiss with Prejudice the Amended Complaint. (Doc. # 89.) Defendant TOSCO timely objected to Recommendation (Doc. # 91), to which Plaintiff Susan Robinson replied in support of the Recommendation (Doc. # 97). For the reasons described herein, the Court rejects the Recommendation and grants Defendant TOSCO's Motion to Dismiss with Prejudice (Doc. # 61).

## I.   BACKGROUND

Plaintiff owns land in Rio Blanco County, Colorado. (Doc. # 48 at 1.) This action concerns a parcel of real estate adjacent to Plaintiff's land and located in portions of Sections 2, 3, 4, 9, 10, 11, 15, and 16 of Township 4 South, Range 95 West of the Sixth

Prime Meridian, Rio Blanco County, Colorado (the "Property"). The Property is roughly 2,300 acres (four square miles), (Doc. # 91 at 1), and is depicted on Plaintiff's map exhibit (Doc. # 48-1) by the green "adverse possession claim boundary line" (Doc. # 48 at 2).

Plaintiff alleges that her family acquired by homesteading the Property at the start of the twentieth century and has used the homesteaded land as a sheep and cattle ranch since then. (*Id.*) The Bureau of Land Management (the "BLM") came to own the Property at some point prior to 1986. (*Id.*) In 1972, Plaintiff acquired a grazing lease for the Property "or a portion thereof" from the BLM. (*Id.*) In 1986, Defendant TOSCO purchased a portion of the Property from the BLM. (*Id.*) The BLM informed Plaintiff in 1987 that the Property was no longer available to lease and that Plaintiff could continue to lease the Property from Defendant TOSCO. (*Id.* at 3.) Plaintiff did not continue to lease the Property from Defendant TOSCO, nor did Plaintiff negotiate a new lease with Defendant TOSCO. (*Id.*) Defendant TOSCO never gave Plaintiff permission to be on the Property. (*Id.*)

Plaintiff contends that since 1986, she and her family "have acted as the average landowner would in using and overseeing the Property." (*Id.*) She describes possessing and maintaining the Property by:

> [C]onstructing and maintaining roads, fences, and gates across and through the Property; installing and/or maintaining windmills, springs, and wells on the Property; spraying for and eliminating noxious weeds on the Property; and grazing livestock on the Property.

(*Id.*) Plaintiff also asserts that she and her husband (now deceased) regularly "inspected the Property," "excluded others, including . . . hunters and hikers," and

"maintained gates and fences" to thwart visitors. (*Id.*) Plaintiff alleges that in early 2016, shortly after her husband's death, a representative of Defendant TOSCO "demanded that she execute a lease for the Property," but that she "refused to sign the lease and advised Defendant TOSCO's representative that the Property already belonged to her." (*Id.* at 4.)

Plaintiff describes turning out approximately 200 cows and calves for grazing into the Schutte Gulch on her Property and then herding them to the Gordon Gulch, also on her Property, in May and June 2017.[1] (*Id.*) According to Plaintiff, she discovered in early June 2017 that Defendant TOSCO "had, without [her] knowledge or permission, interfered with [her] gates . . . , herded [her] cattle away from the pasture on BLM land, and cut off [her] cattle from feed or water." (*Id.* at 3–4.) She also alleges that Defendant TOSCO chased her cattle through a fence it constructed to impede the livestock's access to water and grazing land. (*Id.* at 5.) Defendant TOSCO's actions allegedly caused "irreparable harm to Plaintiff and her cattle, including but not limited to the orphaning and death of calves and potential loss of Plaintiff's livelihood from cattle ranching." (*Id.* at 6.)

Plaintiff initiated this action against Defendant TOSCO on June 6, 2017 (Doc. # 4) and amended her Complaint to include Defendant XTO Energy Inc. ("XTO") and additional claims on July 17, 2017 (Doc. # 48.) Plaintiff asserts eight claims against Defendants: (1) quiet title through adverse possession; (2) alternatively, prescriptive easement; (3) trespass; (4) intentional, wrongful, and malicious driving of cattle; (5)

---

[1] The Schutte Gulch is easily identifiable on Plaintiff's map exhibit. The Court is not able to locate the Gordon Gulch on the map. *See* (Doc. # 48-1.)

negligence; (6) trespass to chattel; (7) tortious interference with prospective business advantage; and (8) unjust enrichment.[2]  (*Id.* at 6–12.)

Defendant TOSCO filed the instant Motion to Dismiss with Prejudice on July 31, 2017, asserting that Plaintiff fails to state any plausible claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. # 61.)  Plaintiff responded in opposition on August 21, 2017 (Doc. # 67), to which Defendant TOSCO replied on September 12, 2017 (Doc. # 73).  Magistrate Judge Gallagher issued his Recommendation on Defendant TOSCO's Motion to Dismiss on January 23, 2018, and advised that this Court deny the motion as to Claims 1, 2, 3, 5, 6, and 8 and grant it as to Claim 7 (tortious interference with prospective business advantage).  (Doc. # 89.)  Defendant TOSCO filed its Objections to the Recommendation on February 6, 2018.  (Doc. # 91.)  Plaintiff responded in support of the Recommendation on February 27, 2018.  (Doc. # 97.)

Separately, Defendant XTO—not party to this dispute over this Recommendation—filed its own Motion to Dismiss for failure to state a claim on September 5, 2017.  (Doc. # 71.)  Magistrate Judge Gallagher recommended on January 16, 2018, that Defendant XTO's Motion to Dismiss be granted for failure to state a claim.  (Doc. # 88.)  He concluded that Plaintiff's Amended Complaint was insufficiently specific as to Defendant XTO.  (*Id.* at 10.)  No objections to that Recommendation were filed, and this Court affirmed and adopted the Recommendation

---

[2] As the Magistrate Judge observed, (Doc. # 88 at 3), Plaintiff's claim headings do not specify which claims are asserted against which Defendants.  *See* (Doc. # 48 at 6–12.)  The Court therefore assumes that Plaintiff asserts all eight claims against both Defendant TOSCO and Defendant XTO.

4

on March 1, 2018. (Doc. # 98.) Accordingly, Defendant XTO was dismissed from the case.

On February 13, 2018, Defendant TOSCO filed its Conditional Answer and Counterclaim to Plaintiff's Amended Complaint, in which Defendant TOSCO denied each of Plaintiff's claims and asserted one counterclaim against Plaintiff for trespass. (Doc. # 94 at 11.)

## II. APPLICABLE LEGAL STANDARDS

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Rule 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir.1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

### B. DISMISSAL PURSUANT TO RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has "'not nudged [his] claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**C.     ADVERSE POSSESSION AND PRESCRIPTIVE EASEMENT**

To obtain title by adverse possession, a party must establish that his possession was hostile, actual, exclusive, adverse, under a claim of right, and uninterrupted for the statutory period. *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd. P'ship*, 226 P.3d 1155, 1160 (Colo. App. 2009) (citing *Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989)). The statutory period in Colorado is eighteen years. Colo. Rev. Stat. § 38-41-101(1). A claimant must establish the elements of adverse possession by a preponderance of the evidence, *Hayden*, 772 P.2d at 52, and "[e]very reasonable presumption is made in favor of the true owner as against adverse possession," *Lovejoy v. Sch. Dist. No. 46 of Sedgwick Cty.*, 269 P.2d 1067, 1070 (1954).

6

A prescriptive easement "is acquired when the prescriptive use is open or notorious, continuous without effective interruption for at least eighteen years, and either adverse or pursuant to an attempted but ineffective grant." *Brown v. Faatz*, 197 P.3d 245, 249 (Colo. App. 2008) (citing *Matoush v. Lovingood*, 177 P.3d 1262, 1270 (Colo. 2008)). Unlike adverse possession, a prescriptive easement "does not carry any title to the land over which it is exercised, nor does it serve to dispossess the landowner." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998).

### III.    ANALYSIS

**A.    THE MAGISTRATE JUDGE'S ANALYSIS**

The Magistrate Judge rejected each of Defendant TOSCO's arguments for dismissal. First, Magistrate Judge Gallagher determined that Plaintiff sufficiently alleged facts supporting claims for adverse possession and prescriptive easement (Claims 1 and 2). (Doc. # 89 at 8.) He observed that Plaintiff specifically described using parts of Defendant TOSCO's land, such as the Schutte Gulch, maintaining gates and fences to exclude hunters and hikers, and using the land in what the Magistrate Judge characterized as "the fashion that would be appropriate for rural grazing land in north-west Colorado." (*Id.* at 8–9.) Relevant here, Magistrate Judge Gallagher rejected Defendant TOSCO's assertion that Plaintiff failed to establish adverse use after initially using the Property with permission. (*Id.* at 9–10.) He accepted without analysis Plaintiff's argument "that notice occurred in 1986 when TOSCO purchased [the

7

Property] from the BLM" and held that the issue of notice is "properly reserved for the finder of fact." (*Id.*)

As to Claims 3, 4, 5, and 6, Magistrate Judge Gallagher accepted Defendant TOSCO's argument that these claims are dependent on Plaintiff's ownership of the land. (*Id.* at 10.) "Having found that Plaintiff sufficiently and plausibly plead adverse possession," he concluded that "it naturally flows that she stated enough to plausibly state . . . that the land was hers" and that, therefore, she was entitled to relief on these claims. (*Id.*) Magistrate Judge Gallagher rejected Defendant TOSCO's assertions about Claim 8, unjust enrichment, stating that whether Plaintiff satisfied the elements of the claim "are not fodder for dismissal at this point" and are "to be left to a jury." (*Id.* at 13.)

Finally, Magistrate Judge Gallagher recommended that the Court dismiss Plaintiff's claim for tortious interference with a prospective business advantage (Claim 7) because "Plaintiff . . . misconstrued the nature of this claim" and "fil[ed] it in an inapplicable situation."[3] (*Id.* at 12.)

## B.  DEFENDANT TOSCO'S OBJECTIONS

Defendant TOSCO objects to the Recommendation for three reasons: (1) the Magistrate Judge "incorrectly interpreted Colorado law on permissive use that later becomes adverse;" (2) he "applied a different pleading standard to [Plaintiff's] allegations against [Defendant] TOSCO than to her allegations against [Defendant]

---

[3] Defendant TOSCO does not object to Magistrate Judge Gallagher's recommendation that Claim 7 be dismissed. See (Doc. # 89 at 11–12.) Seeing no clear error in his analysis of Claim 7, the Court does not address it further. See Fed. R. Civ. P. 72 advisory committee's note (1983).

XTO;" and (3) "because [Plaintiff's] claims for adverse possession and a prescriptive easement should be dismissed, her claims alleging harm to her cattle also should be dismissed." (Doc. # 91 at 5–12.)

1. Claims for Adverse Possession and a Prescriptive Easement

The Court begins with Defendant TOSCO's first objection. In its first objection, Defendant TOSCO "objects to the Magistrate's finding that [Plaintiff] sufficiently established that her possession of TOSCO's property was adverse for the requisite statutory period." (*Id.* at 5.)

Claims for adverse possession and a prescriptive easement both require that the claimed possession is adverse to the true owner's interest. *See Beaver Creek Ranch*, 226 P.3d at 1160; *Brown*, 197 P.3d at 249. There is a distinction in Colorado law between possession that is adverse from the outset and possession that begins as permissive but later becomes adverse. In this case, Plaintiff's possession of the Property originated upon her becoming a lessee of the land from the BLM, "hence [s]he was there permissively" from the outset.[4] *See Segelke v. Atkins*, 357 P.2d 636, 638 (Colo. 1960). "The mere lapse of time after a permissive entry obtained from [the true owner] does not confer adverse or hostile title." *Id.* (citing 2 C.J.S. Adverse Possession § 87).

Rather, where original entry on land is permissive, "**notice or an explicit disclaimer** must be given to the owner before the character of possession becomes

---

[4] Permissive use can begin under the true owner's predecessor. *See, e.g.*, *Miller v. Bell*, 764 P.2d 389, 390 (Colo. App. 1988). This is true in this case, where Plaintiff's permissive use of the Property began under the BLM, Defendant TOSCO's predecessor in ownership.

adverse." *Id*. (collecting cases); *see, e.g., Surface Creek Ditch & Reservoir Co. v. Grand Mesa Resort*, 168 P.2d 906, 914 (Colo. 1946) (where the claimant's use was initially possessive, "nothing short of an explicit disclaimer of such relationship and a notorious assertion of right [by the claimant] would render its holding hostile and adverse to [the true owner]"). This notice or explicit disclaimer must be "a clear, positive, and unequivocal act." *Lovejoy*, 269 P.2d at 1068. Relevant here, continued use of property is insufficient to provide such notice. *See Segelke*, 357 P.2d at 638; *Lovejoy*, 269 P.2d at 1070.

In the matter now before the Court, the Magistrate Judge erred when he rejected Defendant TOSCO's argument that Plaintiff fails to allege notice adequate to make her use of the Property adverse. *See* (Doc. # 89 at 9–10.) First, Magistrate Judge Gallagher's statement that "Plaintiff argues that notice occurred in 1986 when TOSCO purchased [the Property] from the BLM, Plaintiff was given an option to lease from the TOSCO [sic], [and] Plaintiff did not execute such a lease, yet remained in the [Property]" is incorrect. *See* (*id.* at 9) (citing Doc. # 48 at 2–3.) Plaintiff does **not** allege notice in her Amended Complaint. She merely states that when the BLM informed her in its Notice of Final Decision that she could continue to lease the Property from Defendant TOSCO, she "did not continue to lease the Property from Defendant TOSCO, nor did [she] renegotiate a lease with Defendant TOSCO." **Nowhere** does she allege that she took any action, much less "clear, positive, and unequivocal" action, to inform Defendant TOSCO that she disclaimed her prior permissive use of the property and was now

asserting a right to use the property in a manner that was hostile and adverse to Defendant TOSCO's interest in the Property. See *Lovejoy*, 269 P.2d at 1068.

If the Magistrate Judge implicitly assumed that Plaintiff's continued use of the Property constituted notice to Defendant TOSCO, that too was an error. As the Court has already explained, continued use of property is insufficient to provide notice of adverse use where the claimant's initial use or possession was permissive. See *Segelke*, 357 P.2d at 638. The Colorado Supreme Court's holding in *Lovejoy*, 269 P.2d at 1070, is persuasive. At issue was a schoolhouse located on a 160-acre parcel of land. Though the record was not clear, the Supreme Court accepted that, in the nineteenth century, the owners of the land "gladly permitted the establishment of a school house in their immediate community." *Id*. at 1068. In the early twentieth century, "the State issued its patent" to that 160-acre parcel, without any "reservation or exception" to a series of private owners. *Id.* at 1069. By 1951, Phyllis Lovejoy had acquired title to the parcel "without any exception or reservations as to the school land of approximately two acres." *Id*. When Lovejoy requested in 1951 that the school district remove the schoolhouse, the school district claimed it had acquired title to the land in the schoolhouse's immediate vicinity by adverse possession because it had continuously operated the school until 1947. *Id*. at 1068. The Colorado Supreme Court rejected the district's adverse possession claim, holding that **continuous operation** of the school did **not** constitute a "clear, positive and unequivocal act on the part of the district . . . that would disclose its claim . . . to the land by adverse possession." *Id*. The Court concluded that "**mere occupancy was not sufficient** to put any of the true

11

owners on notice that the district claimed the land" and therefore rejected the district's adverse possession claim. *Id.* at 1070 (emphasis added). Similarly, Plaintiff's allegations in the instant action are insufficient to make it plausible that she gave Defendant TOSCO notice of her adverse use in a clear, positive, and unequivocal act. Continuous use, without more, does not constitute adequate notice of adverse use.

For this reason, the Court agrees with Defendant TOSCO that Plaintiff fails to sufficiently allege that her use of the Property was adverse to Defendant TOSCO's ownership. *See* (Doc. # 91 at 7–9.) Accordingly, she fails to state claims for adverse possession and a prescriptive easement.

2. Plaintiff's Claims Dependent on Ownership of the Property

The Court agrees with Magistrate Judge Gallagher and Defendant TOSCO that Plaintiff's claims for trespass; negligence; intentional, wrongful, and malicious driving of cattle; negligence; and trespass to chattel (Claims 3–6) depend on her entitlement to use the Property. (*Id.* at 11); *see* (Doc. # 89 at 10). Because Plaintiff fails to state claims for adverse possession and a prescriptive easement, these dependent claims also must be dismissed pursuant to Rule 12(b)(6). Magistrate Judge Gallagher erred in concluding otherwise. *See* (Doc. # 89 at 10.)

3. Plaintiff's Claim for Unjust Enrichment

Finally, the Court also disagrees with the Magistrate Judge's analysis of Plaintiff's Claim for Unjust Enrichment (Claim 8). The claim of unjust enrichment requires: "(1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant

12

under such circumstances that it would be inequitable for it to be retained without payment of its value." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1096–97 (Colo. 1982). Plaintiff fails to allege **how** Defendant TOSCO has or will benefit from her alleged maintenance of roads, fences, gates, springs, wells, water troughs, and catch ponds or her spraying of noxious weeds. She merely concludes that Defendant TOSCO does benefit. *See* (Doc. # 48 at 11–12.) The Magistrate Judge did not address the sufficiency of her allegations at all; he "left [it] for a jury." (Doc. # 89 at 13.) Because Plaintiff fails to plead factual allegations that make it plausible Defendant TOSCO was unjustly enriched, dismissal pursuant to Rule 12(b)(6) is appropriate.

For these reasons, the Court agrees with Defendant TOSCO that dismissal of Plaintiff's claims is warranted for failure to state a claim.

## IV. <u>CONCLUSION</u>

It is hereby ORDERED that the Court REJECTS that Magistrate Judge's January 23, 2018, Recommendation (Doc. # 89.) It is

FURTHER ORDERED that Defendant TOSCO's Motion to Dismiss with Prejudice the Amended Complaint (Doc. # 61) is GRANTED. Plaintiff's Amended Complaint (Doc. # 48) is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that Defendant TOSCO shall submit a status report to the Court as to whether it intends to pursue its counterclaim against Plaintiff. This status report shall be submitted on or before March 26, 2018.

DATED: March 12, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge